## WATKINS *vs.* TUSKALOOSA AND NORTHPORT MANUFACTURING COMPANY.

[BILL IN EQUITY BY STOCKHOLDER OF PRIVATE CORPORATION, FOR ASCERTAINMENT AND RECOVERY OF HIS INTEREST.]

1. *When stockholder in private corporation may come into equity.*—Where an incorporated company enters into a written contract with one of its stockholders, appointing him its general agent and superintendent, and agreeing, in the event of his removal from that office, " to pay him the value of his interest as stockholder in said company, to be ascertained by a reference to two arbitrators, one to be selected by each party, with authority to them to select an umpire,"—such stockholder cannot come into equity, for the ascertainment and recovery of the value of his interest, without averring a full compliance on his part with the stipulations of the agreement, or a sufficient excuse for his failure to comply ; and the fact " that the company failed, in his opinion, to appoint a suitable person as arbitrator," is not sufficient to excuse his refusal to submit to the arbitration.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by the appellant, against the company and individual members of the Tuskaloosa and Northport Manufacturing Company, a private corporation chartered by the legislature of this State ; and sought to ascertain and obtain by decree of the court the value of his interest as a stockholder in said corporation. The bill was founded on a written contract between the complainant and said corporation, which was made an exhibit to the bill, in these words:

" Memorandum of an agreement this day entered into between the Tuskaloosa and Northport Manufacturing Company and William W. Watkins. The said Watkins agrees to subscribe one hundred shares, being $10,000, to the stock of said company ; in consideration of which, the said company agrees to appoint said Watkins the superintendent·and general agent of the mill of said company ; and as such superintendent and general agent of the mill of said company, the said Watkins is to purchase

cotton and other materials to be wrought at said mill, and to sell and dispose of the manufactured fabrics; to employ and pay off all laborers, overseers, and hands; to keep the mill supplied with everything necessary to its successful operation; to keep the books of the company; to manage and regulate its fiscal affairs, and to direct, control and manage generally the business of the company, under the direction of the board of trustees; the salary of said superintendent to be $1200 *per annum*, payable quarterly. And should the stockholders of said company, or the board of trustees, remove the said Watkins, or abolish or lessen his salary, then the said company agrees to pay the said Watkins the value of his interest as a stockholder in said company; to be ascertained by a reference to two arbitrators, one to be selected by each party, with authority to select an umpire; unless the parties can themselves agree upon the value of said interest. It is further agreed, that the stipulations of this contract shall not be obliga-, tory, until $50,000 of stock in said company is subscribed, over and above the subscription of said Watkins. In witness whereof, John R. Drish, president of said company, and the said Watkins, have hereunto set their hands and seals, this 8th June, 1852.

John R. Drish, [seal,]<br>
Pres. Tuska. and N. P. Man. Co.<br>
W. W. Watkins, [seal.]"

At the foot of this contract, the individual stockholders of the company signed their names to an agreement in these words: "The undersigned, stockholders in the Tuskaloosa and Northport Manufacturing Company, do hereby guaranty the performance of the stipulations entered into by the said company in the foregoing agreement, should said Watkins be removed from the agency and superintendence of the company's mill, or his salary be reduced."

The bill alleged, that on the 17th June, 1852, the additional $50,000 having been previously subscribed, he paid the $10,000 subscribed by him under this contract, was appointed general agent and superintendent of the company as stipulated, and entered on the discharge of his

duties as such; that in December, 1853, the stock of the company was increased to $100,000, of which complainant owned one hundred and thirty-five shares; that on the 19th September, 1856, by resolution of the board of trustees, he was removed from the said office, and one R. C. McLester was appointed in his stead; that the company at that time had declared no dividends to its stockholders; that it neglected and refused to settle with him, as stipulated in said contract, on account of his interest as a stockholder; that he and the committee appointed by the company "were unable to agree, either upon the value of his stock, or the amount of shares covered by said contract;" that an effort, made between himself and the company, "to have the value of his interest as a stockholder ascertained, failed, because the parties could not agree upon the arbitrators,—the said company failing, in his opinion, to nominate a suitable person who was willing to undertake the reference; and he was therefore compelled to revoke the authority to arbitrate." The prayer of the bill was for an account, in order that the complainant's interest might be ascertained, and for general relief.

The chancellor sustained a demurrer to the bill for want of equity, and his decree is now assigned as error.

J. J. ORMOND, for the appellant.

E. W. PECK, and W. R. SMITH, *contra.*

RICE, C. J.—The bill is filed by Watkins, to obtain a decree for the value of his interest as a stockholder in the Tuskaloosa and Northport Manufacturing Company. He founds his right to a decree upon the agreement set forth in "Exhibit A" to his bill.

But he is not entitled to the decree which he seeks, unless he has done, or offered to do, all that the agreement required him to do, or shows a valid legal excuse for not having done or offered to do all that the agreement required him to do.

The agreement clearly required him to refer, or to offer to refer, the ascertainment of the value of his interest as

a stockholder in said company "to two arbitrators, one to be selected" by him, and one by the company, with authority to select an umpire; for it was the value *thus to be ascertained* that the express words of the agreement bound the company to pay. Now the statements of his bill, when construed most strongly against him, as they must be, fail to show that he has so referred or offered to refer the ascertaiment of the value, or that any valid legal excuse existed for his failure so to refer or to offer so to refer. The allegation of his bill in relation to that matter is as follows: "An effort made by the company and orator, to leave the value of orator's interest as a stockholder to be ascertained by an arbitration, failed, *because* the parties could not agree upon the arbitrators; the said company failing, *in the opinion of orator*, to nominate a *suitable* person, who was willing to undertake the reference, and orator was *therefore* compelled to revoke the authority to arbitrate."

This allegation shows, that Watkins was not even willing that the value of his interest as a stockholder should be ascertained in the mode provided for in the agreement, unless the company, in selecting the referee whom it had the right by the agreement to select, would choose one that Watkins *thought* was suitable. It is very certain that, if the company was willing to select a referee who was in fact suitable, Watkins' *opinion* that he was unsuitable could not excuse Watkins for preventing the ascertainment of the value in the mode provided for in the agreement. The bill does not even allege the unsuitableness of the referee who was selected or about to be selected by the company; but alleges only *the opinion* of Watkins that he was unsuitable.

Whether, after Watkins has in vain done, or offered to do, all that the agreement requires him to do, in order to get the value of his interest ascertained in the mode therein specified, he may not be entitled to invoke the aid of the chancery court, we shall not now consider. But it is clear that, without doing, or offering to do, more than his bill shows he has done or offered to do, to have the value of his interest as a stockholder ascertained in

the mode specified in the agreement, he has no right to relief in such a court. His bill contains no equity, and was, therefore, properly dismissed.

The decree of the chancellor is affirmed, at the costs of appellant.